IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| VICTORIA E. KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 3:06-cv-1024-WC |
| ) | [wo] |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42. U.S.C. §§ 1381, *et seq.*, Victoria E. Kelly ("Kelly" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the court affirms the Commissioner's decision**.**

**I. NATURE OF THE CASE**

Kelly requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and

supplemental security income. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999), (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis*, 125 F.3d at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d

842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. PROCEEDINGS

Kelly claims disability due to *left shoulder surgery, right hand carpel tunnel syndrome, and right elbow tendinitis*. (Tr. 70-79). Following initial administrative denial of her claim, Kelly requested a hearing before an administrative law judge ("ALJ") (Tr. 34-35). ALJ Joseph Gilliland convened an evidentiary hearing on November 30, 2004. (Tr. 376-

415). However, prior to issuing a decision, ALJ Gilliland left his position at the Office of Hearing and Appeals. As such, ALJ Frances P. Kuperman convened an evidentiary hearing on June 24, 2005. (Tr. 416-438). Kelly was represented by an attorney, Darryl Hunt.

ALJ Kuperman received direct testimony from Kelly and a vocational expert, Bonnie Cannon. The remaining evidentiary record consisted of medical reports from treating sources and a "residual functional capacity assessment" completed by medical consultants who reviewed Kelly's medical records upon request of Alabama Disability Determination Services.[1]

## IV. ADMINISTRATIVE DECISION

### A. Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is found disabled – or not – at an early step, remaining steps are not considered. *Id.* This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability

---

[1] Tammika T. Stewart (Tr. 282-289). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

determinations").

The burden of proof rests on a claimant through Step 4. *See Phillips*, 357 F.3d at 1237-39. As such, the claimant bears the burden of proof for the following:

(1) Whether she is currently performing a substantial gainful activity;

(2) Whether she has a severe impairment;

(3) Whether that severe impairment meets or exceeds an impairment in the listings; and

(4) Whether she can perform her past relevant work.

*Phillips*, 357 F.3d at 1237-1239. When a claimant carries the Step 1 through Step 4 burden, the proof establishes a *prima facie* case of qualifying disability. It is only at the fifth step that the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence. *Id*. Morever, it can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[2]

---

[2] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B.     Findings and Conclusions**

Employing the five step process, ALJ Kuperman found that Kelly has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2)[3]; the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Kelly can perform her past relevant work (Step 4). (Tr. 24-25). As such, Kelly <u>did not</u> establish her *prima facie* case, and the fifth-step analysis is not necessary.

At Step Four, ALJ Kuperman states she evaluated Kelly's RFC and also received

---

[3]     ALJ Kuperman found the following "severe" impairments: status left shoulder debridement and decompression, tennis elbow and right carpel tunnel release. (Tr. 21).

testimony from a vocational expert regarding Kelly's ability to perform past relevant work. (Tr. 22). Upon consideration of the record, including the vocational expert's testimony, ALJ Kuperman determined Kelly retains the RFC to perform her past relevant work. (Tr. 22-24). Thus, the inquiry ends without further evaluation. Consequently, the ALJ found Kelly has not been disabled since the alleged onset date. (Tr. 24).

## V. ISSUES

Kelly raises two issues on appeal:

(1) Whether the commissioner properly considered Plaintiff's pain and other non-exertional impairments as required by social security laws and regulations; and

(2) Whether the ALJ's credibility finding satisfies the requirements of social security ruling 96-7p.

Pl. Br. at p. 1.

The Commissioner recharacterizes the two issues as one issue, "whether the ALJ properly determining the credibility of Kelly's subjective complaints." Def. Br. at p. 2. Still, the Commissioner does specifically address all the issues raised by Plaintiff. Def. Br. at 2.

## VI. DISCUSSION AND ANALYSIS

To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:

(1) Evidence of an underlying medical condition; <u>and either</u>

(2) Objective medical evidence confirming the severity of the alleged pain; <u>or</u>

(3) That the objectively determined medical condition can reasonably be

      expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

      In the case at hand, although ALJ Kuperman does not specifically cite or refer to the language of the three-part test in *Holt*, her findings and discussion indicate that the standard was properly applied.  *See Wilson*, 284 F.3d at 1225-26 (the ALJ did not cite or refer to the language of the three-part test in *Holt*, but the findings and discussion indicated that the standard was applied).  Further, ALJ Kuperman cites to 20 C.F.R. § 404.1529 which "contains the same language regarding subjective pain testimony" that the Eleventh Circuit interpreted when initially establishing the three-part pain standard.  *Id*. at 1226 (citations omitted); *see also* Tr. 22 (for ALJ Kuperman's reference to statute and Social Security Ruling 96-7p).  Based on the above, ALJ Kuperman clearly applied the proper pain standard.

      Furthermore, ALJ Kuperman specifically articulated the following findings:

> "[t]he claimant's allegations of disabling impairments are inconsistent with the evidence of record, including her own testimony.  During the hearing she basically stated that she can work.  She specifically stated that she been actively looking for work for the last couple of months and applied for jobs at McDonalds and Burger King which would require the use of her hands and arms which she testified she can barely use.  Her attempts to obtain employment were delayed only due to her lack of transportation. The claimant applied for school in December 2003, several months after her onset date of disability.  She testified that she did not start school because she could not acquire financial aid.  The claimant would have been required to frequently use her right dominant hand to take notes and write assignments.  Her allegations

of pain and limitations are not supported by substantial evidence in the record"

(Tr. 23). ALJ Kuperman provided a detailed description of Kelly's medical records . (Tr. 20-22). Additionally, ALJ Kuperman gives controlling weight to Dr. Martin in that his assessment notes Kelly can perform at least light work. (Tr. 23). ALJ Kuperman also noted Kelly's demeanor at the hearing. (Tr. 23). "[Kelly] did not appear to be preoccupied with personal discomfort, her thoughts did not wander, she answered questions alertly and her general appearance suggested no obvious abnormalities." *Id.* In sum, ALJ Kuperman considered Kelly's symptoms, medical records, vocational expert testimony, and Kelly's own testimony including her ongoing search for a job, and concluded that Kelly's subjective complaints were inconsistent with her own testimony and medical record. Based on the above, this court finds the ALJ made a reasonable decision to reject Kelly's subjective testimony, articulating, in detail, the contrary evidence as her reasons for doing so. Applying the pain standard, ALJ Kuperman properly considered Kelly's assessment of her pain level, and determined that it was not credible to the degree alleged because the objective evidence did not confirm the severity of Kelly's alleged limitations. Consequently, the third prong of the *Holt* pain standard was not met. *Wilson*, 284 F.3d at 1226. Accordingly, the determination was based on substantial evidence and a correct application of the law.

Based on the above information, there was substantial evidence for ALJ Kuperman to determine Kelly can perform past relevant work (Step 4). The vocational expert testified Kelly could work in her past jobs as a case aide, record clerk, social services aide, admitting

clerk, general clerk typist or nurse aide. (Tr. 24, 435-436). The vocational expert further testified there is a significant number of these and similar jobs available both in state and in the national economy.[4] *Id.* Based on this testimony, Kelly would not meet Step 5 of the five-step, burden-shifting analysis. As such, ALJ Kuperman's determination that Kelly is not disabled within the meaning of the Social Security Act is supported by substantial evidence. Further, the Court finds (1) the Commissioner properly considered Kelly's pain and non-exertional impairments as required and (2) ALJ Kuperman's credibility finding satisfies the requirements of Social Security Ruling 96-7p and other applicable laws and standards.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion and Order*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment is entered herewith.

DONE this 10th day of August, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4] Teacher's aid - 2,000 in the state and 300,000 in the national economy. Receptionist - 7,000 in the state and 400,000 in the national economy. Delivery driver - 10,000 in the state and 300,000 in the national economy. (Tr. 436-437)